**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RYAN Q. CLARIDGE,

        Plaintiff,

vs.

I-FLOW CORPORATION, *et al.*,

        Defendants.

Case No.: 2:18-cv-01654-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 16), filed by Defendants Stryker Corporation and Stryker Sales Corporation (collectively "Stryker"). Plaintiff Ryan Q. Claridge ("Plaintiff") filed a Response, (ECF No. 24), and Stryker filed a Reply, (ECF No. 31).

Also pending before the Court is Defendant I-Flow Corporation's ("I-Flow") Motion to Dismiss, (ECF No. 19). Plaintiff filed a Response, (ECF No. 25), and I-Flow filed a Reply, (ECF No. 29).

For the reasons discussed herein, Stryker and I-Flow's (collectively "Defendants'") Motions to Dismiss are **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

This case arises from severe shoulder injuries Plaintiff sustained after being treated with "pain pumps," a medical device manufactured, marketed, and sold by Defendants. (Compl. ¶¶ 8–9, ECF No. 1). Pain pumps are intended to offer post-surgery pain relief by delivering a continuous dose of medication through a catheter directly into the operative site of a prior surgical procedure. (*Id.* ¶ 9). Pain pumps are designed to be used with common anesthetics, which the pumps release into a patient's surgical site over the course of two or more days. (*Id.* ¶ 10).

Plaintiff, a former professional football player, was drafted by the New England Patriots in 2005 as a linebacker under a four-year contract. (*Id.* ¶ 23). After injuring his left shoulder during pre-season training, Plaintiff underwent arthroscopic surgery under the care of Dr. Randy Yee ("Dr. Yee") at Seven Hills Surgery Center in Henderson, Nevada. (*Id.* ¶¶ 24–25). Following surgery, Dr. Yee inserted into Plaintiff's left shoulder an On-Q pain pump manufactured and sold by Defendant I-Flow. (*Id.*). For at least 48 hours, the On-Q pain pump consistently infused anesthetic medication into Plaintiff's shoulder. (*Id.* ¶ 26).

Unbeknownst to Plaintiff and Dr. Yee, the On-Q pain pump killed the living chondrocytes in Plaintiff's shoulder cartilage, causing irreversible destruction to the same. (*Id.* ¶ 27). For the next several months, despite undergoing physical therapy, Plaintiff's shoulder condition worsened, causing him to see Dr. Yee for further treatment. (*Id.* ¶¶ 28– 29). In January 2006, Dr. Yee saw Plaintiff at the Southern Hills Hospital and Medical Center in Las Vegas, Nevada, during which Dr. Yee performed an exploratory arthroscopic examination. (*Id.* ¶ 30). Finding extensive cartilage damage, Dr. Yee removed the dead cartilage and inserted a pain pump manufactured and sold by Defendant Stryker. (*Id.* ¶ 31).

Plaintiff alleges that the administration of Defendants' pain pumps destroyed Plaintiff's left shoulder, rendering him unable to play football and leaving him with permanent impairments. (*Id.* ¶¶ 32–33). Over ten years after using Defendants' devices, Plaintiff learned that the pain pumps killed the living cells in his shoulder cartilage, resulting in the destruction of his shoulder joint cartilage and his diagnosis with chondrolysis. (*Id.* ¶ 35).

At all relevant times, Defendants allegedly represented to health care professionals and the general public that pain pumps are safe, effective, and appropriate for post-operative pain management and application in or near the shoulder joint. (*Id.* ¶¶ 12–13). Defendants did so, according to Plaintiff, without studying the safety impact of using pain pumps along with anesthetic medications in the joint space, and despite knowledge that the U.S. Food and Drug

Administration ("FDA") declined to approve pain pumps for orthopedic use due to safety concerns. (*Id.* ¶¶ 14–17). Thus, at all pertinent times, Plaintiff alleges Defendants knew or should have known that pain pumps, in conjunction with anesthetic medications in the joint space, could be toxic to shoulder joint cartilage. (*Id.* ¶ 15).

Plaintiff commenced this action on August 30, 2018, bringing the following causes of action against Defendants for their respective roles in manufacturing, marketing, and selling pain pumps: (1) strict products liability; (2) negligence; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) breach of the implied warranty of fitness for a particular purpose; and (6) misrepresentation and fraudulent concealment. (*Id.* ¶¶ 36–87).

Defendants move to dismiss Plaintiff's causes of action for breach of implied warranties and misrepresentation and fraudulent concealment, as well as Plaintiff's prayer for punitive damages. (*See* Stryker's Mot. to Dismiss ("MTD"), ECF No. 16); (I-Flow's MTD, ECF No. 19).

## II. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a Ruling on a Rule 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

## III. DISCUSSION

Defendants Stryker and I-Flow (collectively "Defendants") move to dismiss and strike portions of Plaintiff's Complaint. Defendants contends that the fourth and fifth causes of action, for breaches of implied warranties, cannot survive due to lack of privity between Plaintiff and Defendants. (Stryker's MTD 6:1–26, ECF No. 16); (I-Flow's MTD 4:1–5:6, ECF No. 19). Defendants also seek to dismiss Plaintiff's misrepresentation and fraudulent concealment claim, and strike the prayer for punitive damages, on the basis that the Complaint is without requisite factual specificity. (Stryker's MTD 7:1–11:15); (I-Flow's MTD 5:8–15:7).

### A. Breach of Implied Warranties

Nevada law recognizes two types of implied warranties: (1) the warranty of merchantability; and (2) the warranty of fitness for a particular purpose. *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1469 (D. Nev. 1992); *Long v. Flanigan Warehouse Co.*, 382 P.2d 399, 402 (Nev. 1963). To establish a breach of warranty, "a plaintiff must prove that

a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained." *Nevada Contract Servs., Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003).

Defendants argue that Plaintiff cannot recover on either theory of implied warranty because there is no privity of contract between Plaintiff and Defendants. (Stryker's MTD 6:1–26); (I-Flow's MTD 4:1–5:6). Defendants explain that the pain pumps were "sold by [Defendants] to the hospital and surgeon—and not to Plaintiff—just as the warnings and instructions are directed to the physician, not the patient/Plaintiff." (Stryker's MTD 6:12–18). Plaintiff responds that vertical privity is not a prerequisite to recovery for injuries caused by defective products. (Pl's Resp. to Defs.' MTDs ("Resp.") 7:6–8:23, ECF No. 24). Even if required, Plaintiff continues, vertical privity is satisfied because Plaintiff is within the "chain of distribution" as "successor-in-interest to the immediate buyers," and his health-care facility and doctor served as his agent in purchasing the pain pumps. (*Id.* 7:10–8:2).

The Court agrees with Defendants that Nevada case law requires contractual privity between the buyer and seller to establish a breach of implied warranty. *See Long*, 382 P.2d at 402 ("Where the parties to the law suit are not the immediate buyer and seller the weight of authority is that such lack of contractual privity will bar recovery on an implied warranty theory."); *see also Amundsen v. Ohio Brass Co.*, 513 P.2d 1234, 1235 (Nev.1973) (holding that *Long* applies under the Uniform Commercial Code, which supplanted the Uniform Sales Act). The Nevada Supreme Court and Ninth Circuit Court of Appeals have more recently confirmed, albeit in unpublished opinions, that *Long* remains good law and requires privity of contract for implied warranty actions in Nevada. *See Regent at Town Ctr. Homeowners' Ass'n v. Oxbow Constr., LLC*, 419 P.3d 702, 2018 WL 2431690, at *4 (Nev. May 24, 2018) (citing *Long*); *see also Mandevill v. Onoda Cement Co.*, 67 F. App'x 417, 419 (9th Cir.2003) ("[E]ven if vertical privity between a manufacturer and buyer is not required, Nevada still requires horizontal

privity."); *see also Finnerty v. Howmedica Osteonics Corp.*, No. 2:14-cv-00114-GMN-GWF, 2016 WL 4744130, at *7 (D. Nev. Sept. 12, 2016).

Here, neither horizontal, nor vertical privity exists between Plaintiff and Defendants.[1] Plaintiff did not purchase Defendants' pain pumps; nor does Plaintiff allege any contractual relationship with Defendants for their purchase. Without adjoining links in the chain of distribution, vertical privity is absent. With respect to horizontal privity, Plaintiff does not argue for its application. In any event, Nevada limits horizontal privity by statute to cover persons in the family or household of the seller's buyer, *see* NRS 104.2318, rendering it inapplicable under the facts of this case.

Plaintiff argues the parties are in vertical privity because he, as a patient, was the "end user of the product," and his "doctor or hospital was only acting as the agent for [Plaintiff] in buying the pain pump." (*Id.* 7:10–8:2). The authority Plaintiff relies upon—a treatise citing a case applying New Mexico law—neither binds this Court nor appears to provide support for his theory of implied warranty under Nevada law. The treatise cites a proposition concerning *express*, rather than implied warranties; the case referenced by the treatise applies law from a jurisdiction that has abolished the privity requirement in implied warranty actions. *See* 3A David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-318:54 (3d ed.) ("A patient may sue the manufacturer of a prosthetic device on the basis of an express warranty made to the physician, as the latter is the be regarded as the agent of the patient with respect to statements as to the use of a product.") (citing *Perfetti v. McGhan Med.*, 662 P.2d 646 (N.M. App. 1983)); *see Perfetti*, 662 P.2d at 654 ("We hold that defendant may be held liable for

---

[1] Horizontal privity means "[t]he legal relationship between a party and a nonparty who is related to the party (such as a buyer and a member of the buyer's family)." Black's Law Dictionary 1320 (9th ed. 2009). Vertical privity, on the other hand, is "[t]he legal relationship between parties in a product's chain of distribution (such as a manufacturer and a seller)." *Id.*

breach of implied warranty of merchantability under the UCC without regard to privity of contract between defendant and either plaintiff or her surgeon.").

Because this Court is bound by Nevada law, Plaintiff cannot recover under theories of implied warranty absent privity of contract with Defendants. Consequently, the lack of privity between the parties here forecloses Plaintiff from prevailing on his implied warranty claims. As such, the Court dismisses these claims with prejudice.

### B. Misrepresentation & Fraudulent Concealment

Defendants contend that Plaintiff's misrepresentation and fraudulent concealment claim must be dismissed because the allegations in support lack sufficient specificity under Rule 9 of the Federal Rules of Civil Procedure. (Stryker's MTD 7:4–9:24); (I-Flow's MTD 7:7–9:7).

#### 1. Intentional Misrepresentation

"Intentional misrepresentation is established by three factors: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). "[T]he suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Id.* (internal quotation marks omitted).

Preliminarily, Plaintiff has sufficiently stated a claim to survive 12(b)(6) analysis. Plaintiff alleges Defendants knew the dangers associated with pain pumps, as well as the FDA's refusal to approve pain pumps for use in and around the joint space due to safety concerns. (Compl. ¶¶ 13–15). Notwithstanding this knowledge, Defendants allegedly marketed pain pumps as safe to the medical community at large and to Dr. Yee for use on Plaintiff. (*Id.* ¶¶ 70–73). According to the Complaint, Defendants did so to induce the reliance of Dr. Yee and other shoulder surgeons and obtain their purchases of pain pumps. (*Id.* ¶¶ 77–79). Finally,

Dr. Yee allegedly relied on Defendants' misrepresentations or omissions in deciding to implant Defendants' pain pumps into Plaintiff's intra-articular joint, which caused permanent destruction to Plaintiff's shoulder. (*Id.* ¶¶ 81–83).

Defendants contend that Plaintiff's allegations fail to meet the heighted pleading standard under Rule 9 of the Federal Rules of Civil Procedure. (Stryker's MTD 7:1–8:27);(I-Flow's MTD 5:8–7:5). Rule 9(b) provides that a party's allegations of fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[I]t is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement." *LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244 (D. Nev. 2014) (collecting cases). Under this standard, a complaint alleging fraud or mistake must include allegations of the "time, place, and specific content of the false representations" as well as the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Id.* at 764–65 (internal quotations omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (internal citation, quotation marks, and alterations omitted).

Here, the primary deficiency in Plaintiff's fraud-based allegations is that Plaintiff neglects to attribute any specific misrepresentation to either Stryker or I-Flow. Instead, Plaintiff's Complaint treats Stryker and I-Flow as though they were one entity, with all substantive allegations referring to Defendants in the collective. (*See, e.g.*, ¶¶ 12–13, 70–73). The Complaint is clear, however, that Stryker and I-Flow are distinct corporate entities that manufacture, market, and distribute their respective versions of the pain pump, which were administered on Plaintiff at different hospitals at different times. (*See* Compl. ¶¶ 25, 30–31).

To the extent Plaintiff intends to claim that Defendants have "engaged in precisely the same conduct," Rule 9(b) would still require allegations of "particular details of the scheme as applied to [each Defendant individually]." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011).

The "when, where, and how" elements present a closer question, but are enough to put Defendants on notice of the specific, fraudulent conduct alleged. *See United Healthcare*, 848 F.3d at 1180 (recognizing that the "most basic consideration for a federal court" in determining the sufficiency of allegations under Rule 9(b) "is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.") (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2016)). Plaintiff alleges that Defendants' sales representatives "routinely" promoted pain pumps in-person to Dr. Yee and other shoulder surgeons in their "surgical operating rooms," and presumably disseminated information orally, although this is not expressly alleged. (*See* Compl. ¶ 73). *See United Healthcare Ins.*, 848 F.3d at 1180 ("[A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

As to the "what" criterion, Plaintiff alleges three misrepresentations Defendants' sales representatives made to Dr. Yee to induce him to utilize pain pumps for Plaintiff's post-arthroscopic surgery pain relief: (1) pain pump use in the shoulder joint is safe; (2) pain pumps underwent adequate testing for safety, and such testing revealed that pump pains are safe for application in the shoulder joint; and (3) the FDA either approved, or had not advised against, pain pump use in the shoulder joint for post-arthroscopic shoulder surgery. (*Id.* ¶ 71). Assuming Plaintiff can link these alleged misrepresentations to the corresponding who, where,

when, and how criteria, these allegations would suffice to put Defendants' on notice of the conduct charged consistent with Rule 9(b). As such, the Court dismisses Plaintiff's intentional misrepresentation and fraudulent concealment claim with leave to amend.

### 2. Negligent Misrepresentation

Stryker moves to dismiss Plaintiff's negligent misrepresentation theory[2] on the basis that this claim only applies in the context of a business transaction, which Stryker contends is absent from the facts of this case. (Stryker's MTD 9:1–4). I-Flow similarly seeks dismissal of the negligent misrepresentation claim on the basis that it fails under Rule 9's heighted pleading standard. (I-Flow's MTD 7:7–9:7). Plaintiff, for his part, has not responded to this portion of Stryker or I-Flow's argument. Rather, Plaintiff's Responses are limited to discussion of intentional misrepresentation and fraudulent concealment. As such, to the extent Plaintiff pleads a theory of negligent misrepresentation, the Court dismisses the claim with leave to amend. *See* Local Rule 7-2(d).

### C. Prayer for Punitive Damages

Finally, Defendants move to dismiss[3] Plaintiff's prayer for punitive damages on the basis that Plaintiff has not met the "rigorous pleading and proof requirements" to be entitled to such relief. (Stryker's MTD 10:18–11:15); (I-Flow's MTD 11:19–15:7). Plaintiff counters that Defendants' request is procedurally premature and otherwise without merit because Plaintiff pleads a factual basis to support an award of punitive damages. (Resp. 12:18–15:13).

---

[2] Plaintiff's sixth cause of action for "Misrepresentation and Fraudulent Concealment" includes substantive allegations sounding in negligent misrepresentation. (*See* Compl. ¶¶ 72, 75). Thus, the Court construes negligent misrepresentation as one theory in support of the misrepresentation and fraudulent concealment claim.

[3] Defendants interchangeably use "dismiss" and "strike" with respect to their Motions as to Plaintiff's prayer for punitive damages. To the extent Defendants invoke Rule 12(f), this rule "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010). Such a request is "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Id.* at 974.

Under Nevada law, punitive damages may be "awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304–05 (Nev. 1993). Such damages are available "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied . . . ." NRS 42.005. "Malice, express or implied," is defined as "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." NRS 42.001(3). "Conscious disregard," in turn, "means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1).

As discussed above, the Court will grant Plaintiff leave to amend his misrepresentation and fraudulent concealment claim, which may support an award of punitive damages. *See, e.g.*, *In re USA Commercial Mortg. Co.*, 802 F. Supp. 2d 1147, 1169–70 (D. Nev. 2011). At this stage, Defendants have not satisfied the Court that Plaintiff is categorically foreclosed from recovering punitive damages, or that Plaintiff will be unable to marshal facts to support an award of punitive damages in an amended complaint. Therefore, dismissal of Plaintiff's request for punitive damages would be premature. Defendants may renew their arguments in a future motion. *See, e.g.*, *AC Media Grp., LLC v. Sprocket Media, Inc.*, No. 2:16-cv-02145-APG-GWF, 2017 WL 1458198, at *4 (D. Nev. Apr. 24, 2017) ("Whether the plaintiffs will be able to develop facts to support a punitive damages award by clear and convincing evidence is not suitable for resolution at this stage of the proceedings."); *Mitschke v. Gosal Trucking, LDS.*, No. 2:14-cv-1099-JCM-VCF, 2014 WL 5307950, at *4 (D. Nev. Oct. 16, 2014) ("Because any damages dispute is currently premature, the court will address the issue of damages if and when plaintiff succeeds on any of her remaining claims.").

### D. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Plaintiff may be able to plead more allegations to support his misrepresentation and fraudulent concealment claim. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.2003) (noting dismissals under Rule 9(b) are "functional[ly] equivalent" to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable). As discussed above, the allegations fail to distinguish between I-Flow and Stryker and neglect to attribute any specific representation to either. The Court is satisfied, however, that Plaintiff may be able to cure these defects through amendment.

With respect to negligent misrepresentation, the Court notes that the Complaint's misrepresentation and fraudulent concealment claim contains allegations that sound in negligence. (*See, e.g.*, Compl. ¶¶ 72, 75). To the extent Plaintiff intends to bring a claim for negligent misrepresentation, Plaintiff may amend his Complaint to assert this claim.

As to Plaintiff's breach of implied warranty claims, the Court finds that amendment would be futile. Because privity of contract is a prerequisite for recovery under theories of implied warranty in Nevada, the lack of privity here is fatal to Plaintiff's implied warranty claims. Accordingly, the Court dismisses Plaintiff's fourth and fifth causes of action without leave to amend.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Stryker and I-Flow's Motions to Dismiss, (ECF Nos. 16, 19), are **GRANTED in part** and **DENIED in part**. Defendants' Motions are **GRANTED** as follows: Plaintiff's fourth and fifth causes of action for breach of implied warranties are **DISMISSED with prejudice**. Plaintiff's sixth cause of action for misrepresentation, fraudulent concealment, and negligent misrepresentation is **DISMISSED without prejudice**. Defendants' Motions are **DENIED** with respect to Plaintiff's prayer for punitive damages.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the date of this Order's issuance to file an amended complaint. Failure to do so by this deadline will result in the Court dismissing Plaintiff's sixth cause of action with prejudice.

**DATED** this _30_ day of August, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge